IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANSSEN PHARMACEUTICALS, INC. and JANSSEN PHARMACEUTICA NV, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 21-1784 (WCB) (SRF) |
| TOLMAR, INC., | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) ) | **Confidential Version Filed: September 25, 2023** **Public Version Filed: October 2, 2023** |

## JOINT [PROPOSED] PRETRIAL ORDER

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.      NATURE OF THE CASE AND PLEADINGS ................................................................1

II.     JURISDICTION AND STANDING .............................................................................3

III.    UNCONTESTED FACTS ...........................................................................................4

IV.     CONTESTED FACTS ................................................................................................4

V.      STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED.....................4

VI.     EXHIBITS ................................................................................................................5

      A.      Trial Exhibits ................................................................................................5

      B.      Demonstrative Exhibits..................................................................................7

VII.    WITNESSES..............................................................................................................9

VIII.   BRIEF STATEMENT OF INTENDED PROOFS .........................................................13

IX.     STATEMENTS BY COUNTERCLAIMANTS OR CROSSCLAIMANTS ...................19

X.      AMENDMENTS TO THE PLEADINGS ......................................................................19

XI.     CERTIFICATION OF SETTLEMENT DISCUSSIONS................................................19

XII.    MOTIONS IN LIMINE ...............................................................................................19

XIII.   MISCELLANEOUS ISSUES .....................................................................................20

      A.      Setup of Electronic and Computer Devices .......................................................20

      B.      Trial Parameters ...........................................................................................20

      C.      Post-Trial Briefing ........................................................................................21

XIV.    Order to Control Course of Action ...................................................................21

Plaintiffs and Counterclaim-Defendants Janssen Pharmaceuticals, Inc. ("JPI") and Janssen Pharmaceutica NV ("JPN") (collectively, "Plaintiffs" or "Janssen") and Defendant and Counterclaim-Plaintiff Tolmar, Inc. ("Defendant" or "Tolmar"), by their undersigned counsel, submit this Joint Proposed Pretrial Order pursuant to D. Del. LR 16.3(c).  A Pretrial Conference is scheduled for September 29, 2023, at 8:30 a.m.  A four (4) day bench trial before the Honorable William C. Bryson is scheduled to commence on October 10, 2023, and to end on October 13, 2023.

## I.      NATURE OF THE CASE AND PLEADINGS

1.      This is an action brought pursuant to the patent laws of the United States, Title 35, Section 271, United States Code and the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act, *see* 21 U.S.C. § 355(j).

2.      This is an action for the alleged infringement of U.S. Patent No. 9,439,906 (the "'906 Patent" or the "Patent-in-Suit").  The '906 Patent claims, *inter alia*, a dosing regimen for administering paliperidone palmitate to a psychiatric patient in need of treatment for schizophrenia, schizoaffective disorder, schizophreniform disorder, or psychotic disorder.  The '906 Patent issued on September 13, 2016, with twenty-one claims (the "Asserted Claims").  The '906 Patent is listed in the FDA publication "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") as covering INVEGA SUSTENNA® (paliperidone palmitate extended-release injectable suspension) product and was submitted to the FDA for publication in the Orange Book on October 11, 2016.

3.      JPI is the holder of New Drug Application ("NDA") No. 022264 for paliperidone palmitate extended-release injectable suspension, which is prescribed and sold under the trademark Invega Sustenna®.  JPN is the owner of the entire right, title, and interest in and to the '906 Patent.

4.      By letter dated ████████████ (the "Paragraph IV notice letter"), Tolmar informed Janssen that it had submitted an Abbreviated New Drug Application ("ANDA") No. 211995 to the United States Food and Drug Administration ("FDA") seeking approval to engage in commercial manufacture, use, sale, offer for sale, or importation of Tolmar's generic Paliperidone Palmitate 1-mo. Long Acting Injectable in 39 mg (0.25 mL), 78 mg (0.5 mL), 117 mg (0.75 mL), 156 mg (1.0 mL), and 234 mg (1.5 mL) strengths ("Tolmar's Proposed ANDA Products") prior to the expiration of the '906 Patent.  Tolmar included in ANDA No. 211995 a Paragraph IV certification alleging, *inter alia*, that the claims of the '906 Patent are invalid, unenforceable, and/or would not be infringed by the manufacture, use, sale, offer for sale, or importation of the products that are the subject of ANDA No. 211995.

5.      On December 21, 2021, Janssen filed a Complaint against Tolmar for infringement of the '906 Patent.[1]  (D.I. 1.)  Janssen commenced this action within the 45-day period after receiving the Paragraph IV notice letter, as described in 21 U.S.C. § 355(j)(5)(B)(iii).

6.      Tolmar filed its Answer to Janssen's Complaint on March 4, 2022, denying infringement of the '906 Patent and asserting affirmative defenses of non-infringement and invalidity of the '906 Patent.  (D.I. 16.)  Tolmar also alleged two counterclaims, seeking declarations of non-infringement and invalidity of the Asserted Claims. *Id.*

7.      Janssen answered Tolmar's counterclaims on March 23, 2022.  (D.I. 19.)

---

[1] Janssen also sued Tolmar Therapeutics, Inc., Tolmar Pharmaceuticals, Inc., and Tolmar Holding, Inc. for infringement of the '906 Patent.  (D.I. 1.)  On February 28, 2022, the parties stipulated to the dismissal of Tolmar Therapeutics, Inc., Tolmar Pharmaceuticals, Inc., and Tolmar Holding, Inc. without prejudice.  Tolmar Therapeutics, Inc., Tolmar Pharmaceuticals, Inc., and Tolmar Holding, Inc. agreed to be bound, as if they were parties to this action, by any judgment, order, or decision, including any injunction or any appeals thereof.  The Court endorsed and ordered the parties' stipulation on February 28, 2022.  (D.I. 15.)

8.      The Court adopted the parties' proposed construction of four claim terms (D.I. 93):

| Claim Term | Agreed Construction |
|---|---|
| "a month (± 7 days) after the second loading dose" | "21 to 38 days after the second loading dose" |
| "at monthly (± 7 days) intervals" | "every 21 to 38 days thereafter" |
| "psychotic disorder" | "a disorder characterized by psychotic symptoms, such as delusions, hallucinations, disorganized speech, or disorganized or catatonic behavior" |
| "renally impaired psychiatric patient" | "psychiatric patient having reduced ability to clear creatinine" |

9.      On March 2, 2023, the Court held a claim construction hearing.  On April 13, 2023, the Court entered an Order that construed the term "of from about 75 mg-eq." to mean "of about 75 mg-eq."  (D.I. 93.)

10.     On February 21, 2023, the parties entered a Stipulation and Proposed Order Regarding Infringement of U.S. Patent No. 9,439,906, which the court so ordered on February 22, 2023.  (D.I. 86.)  Under the agreement, (1) "if any of claims 1-7, 15 and 17-21 (as dependent from claims 1 and 4) of the '906 Patent are not found to be invalid in this Action, Tolmar will agree to entry of a judgment of infringement and order pursuant to 35 U.S.C. § 271(e)(4)(A) with respect to such claim"; and (2) "if the Court adopts Tolmar's proposed construction of 'of from about 75 mg-eq.,' then Janssen will agree to entry of a judgment of non-infringement with respect to claims 8-14, 16, and 17-21."  (*Id.* ¶¶ 1, 5.)

## II.    JURISDICTION AND STANDING

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     No party contests personal jurisdiction, venue, or standing for purposes of this action.

### III.   UNCONTESTED FACTS

13.    The parties stipulate to the facts listed in attached **Exhibit 1**.  These stipulated facts require no proof at trial and will become part of the evidentiary record in this case.

### IV.   CONTESTED FACTS

14.    Plaintiffs' Statement of Issues of Fact That Remain to Be Litigated is attached as **Exhibit 2**.

15.    Defendant's Statement of Issues of Fact That Remain to Be Litigated is attached as **Exhibit 3**.

16.    If any statement in a party's statement of issues of fact that remain to be litigated should properly be considered an issue of law, then such statement shall be so considered as an issue of law.

### V.   STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

17.    Plaintiffs' Statement of Issues of Law That Remain to Be Litigated is attached as **Exhibit 4**.

18.    Defendant's Statement of Issues of Law That Remain to Be Litigated is attached as **Exhibit 5**.

19.    If any statement in a party's statement of issues of law that remain to be litigated should properly be considered an issue of fact, then such statement shall be so considered as an issue of fact.

## VI.    EXHIBITS

### A.    Trial Exhibits

20.    The parties' Joint Exhibit List is attached as **Exhibit 6**.  The Joint Exhibit List is subject to the parties' continued meeting and conferring in advance of and during trial. Joint exhibits shall be identified by JTX numbers.  Janssen shall provide stamped joint exhibits. Any party may use an exhibit on the Joint Exhibit List.

21.    The list of exhibits that Plaintiffs may offer at trial, and Defendant's objections thereto, is attached as **Exhibit 7**.  Plaintiffs' trial exhibits shall be identified by PTX numbers.

22.    The list of exhibits that Defendant may offer at trial, and Plaintiffs' objections thereto, is attached as **Exhibit 8**.  Defendant's trial exhibits shall be identified by DTX numbers.

23.    The listing of a document on any exhibit list is not an admission that such document is admissible for all purposes (*i.e.,* a waiver of any applicable objection).  Each party reserves the right to object to the relevancy and admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

24.    Each party reserves the right to offer exhibits set forth on the other party's exhibit list, even if not set forth in its own exhibit list. All objections to such exhibits are preserved, regardless of whether such exhibits also appear on the other party's exhibit list. Any exhibit, once admitted, may be used equally by either party subject to any limitation as to its admission into evidence.

25.    The parties agree that exhibits to be used for impeachment purposes need not be included on the list of trial exhibits or disclosed in advance of being used at trial.  The parties agree that exhibits used for impeachment purposes may be admitted into evidence whether or not they are included in the exhibit lists (Exs. 6-8). The parties reserve the right to object on evidentiary or discovery grounds to any such exhibit if used at trial.

26.     The parties agree that the following documents and files shall be deemed *prima facie* authentic within the meaning of Fed. R. Evid. 901 for the purpose of the above-captioned action only, subject to the right of any Party against whom such document or file is offered ("Opposing Party") to adduce evidence to the contrary or to require that the offering Party provide authenticating evidence if the Opposing Party articulates in writing a reasonable, good faith basis to believe the document is inauthentic:

a) any document produced by a Party that bears that Party's letterhead, copyright with that Party's name, and/or corporate logo;

b) any document or file produced by any Party that lists a current or former employee of that Party or that Party itself as an author or custodian and constitutes an internal document created by that Party;

c) any legible U.S. or foreign patent, patent application, patent office publication, or file history;

d) any document that is part of a New Drug Application or Abbreviated New Drug Application;

e) Any correspondence between FDA and a Party;

f) any patent license or assignment agreement involving a Party produced by that Party; and

g) any email produced by a Party that on its face lists an employee, officer, or agent of that Party as a sender or recipient of the email;

h) any publication, article, poster, book chapter, or excerpt thereof found in any periodical, journal, textbook, manual, or other similar scientific or technical publication.  For the avoidance of doubt, Janssen maintains that this provision does not apply to the documents produced at TOL035257–63 and TOL036459–60.

6

27.     The Parties expressly reserve the right to propose additional categories and/or documents that shall be deemed *prima facie* authentic for purposes of this lawsuit. Nothing in this stipulation shall be construed as a waiver of any right to do so.

28.     The parties agree that any description or date for a document reflected on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the content or date of the listed document or any other listed documents.

29.     At the start of trial, counsel will provide a list of witnesses to the Court, the courtroom deputy, and the court reporter.

**B.     Demonstrative Exhibits**

30.     The parties may use demonstrative exhibits, which do not need to be identified on their respective lists of trial exhibits.

31.     Each demonstrative exhibit shall identify by exhibit number and/or Bates number all trial exhibits that form the basis of the demonstrative exhibit.

32.     Plaintiffs' demonstrative exhibits will be identified with unique PDX numbers. Defendant's demonstrative exhibits will be identified with unique DDX numbers.

33.     Demonstrative exhibits, while not substantive evidence, shall be submitted to the Court at the end of trial and included in the record for appeal.

34.     Each party shall serve on opposing counsel by electronic mail and/or electronic media (for large exhibits and any videos or animations to be offered), full color copies of the demonstrative exhibits, or make available for inspection physical exhibits, each intends to use during direct examination of a witness, by 7:00 p.m. ET on the calendar day before such direct examination is expected to take place. The receiving party shall inform the opposing party of any objections to such demonstrative exhibits or physical exhibits by 8:30 p.m. ET that day, and the parties shall meet and confer as soon as possible thereafter to resolve the objections, but in any

event by 9:00 p.m. ET that same day. The notice provisions of this paragraph shall not apply to demonstrative exhibits created in the courtroom during testimony at trial. The notice provisions of this paragraph shall not apply to demonstrative exhibits that do not change, characterize or add anything to the trial exhibit (e.g., that balloon, blow-up, excerpt, or highlight an underlying trial exhibit(s) or parts of trial exhibit(s)).

35.     If good faith efforts fail to resolve objections to the demonstrative or physical exhibits (including videos or animations), the objecting party shall raise its objections with the Court prior to their anticipated use.

36.     The demonstrative exhibits the parties intend to use at trial do not need to be specifically described on their respective list of trial exhibits.  For the avoidance of doubt, a demonstrative that falls into one of the following categories is not required to be specifically described on the parties' respective trial exhibit lists: (a) a copy of part of a single trial exhibit, or a blow-up and/or highlighting of a single trial exhibit or part of a single trial exhibit that has been identified as otherwise required, or (b) a blow-up and/or highlighting of a single deposition or trial transcript or part of a single deposition or trial transcript that has been identified as otherwise required.

37.     For the avoidance of doubt, the notification provisions for demonstrative exhibits do not apply to demonstrative exhibits created in the courtroom during testimony, or to demonstratives used for cross-examination or impeachment purposes, which do not need to be provided to the other side in advance of their use. A party shall not be precluded from using such demonstrative exhibits if used for cross-examination or impeachment purposes for the sole reason that it was not provided before cross-examination of a witness.

## VII.   WITNESSES

38.     Plaintiffs' List of Witnesses Who May be Called Live or by Deposition, along with Defendant's objections thereto, is attached as **Exhibit 9**. Curricula vitae of the expert witnesses that Plaintiffs may call are attached as **Exhibit 15**.

39.     Defendant's List of Witnesses includes witnesses who testified at trial and/or by deposition in *Janssen Pharmaceuticals. Inc., et al v. Teva Pharmaceuticals ISA, Inc.*, C.A. No. 2:18-00734 (D.N.J.) ("the Teva litigation"). Defendant designates deposition and trial testimony taken in the Teva litigation. Defendant's List of Witnesses Who May be Called Live or by Deposition, or by Trial Testimony or Deposition from the Teva litigation, along with Plaintiffs' objections thereto, is attached as **Exhibit 10**.  Curricula vitae of the expert witnesses that Defendant may call are attached as **Exhibit 14**.

40.     The deposition testimony that Plaintiffs may introduce into evidence at trial, and Defendant's counter-designations, is identified in **Exhibit 11**.

41.     The deposition testimony, and deposition and trial testimony taken in the Teva litigation, that Defendant may introduce into evidence at trial, and Plaintiffs' counter-designations, is identified in **Exhibit 12**.

42.     Each party will provide to the other a good-faith list of witnesses it intends to call live at the trial by 7:00 p.m. ET five (5) calendar days prior to the first day of trial, without prejudice to the right to remove any witness.

43.     Each party will provide to the other's counsel of record by electronic mail a written list of the names and order of witnesses who will testify live or by deposition or by trial testimony taken in the Teva litigation by 7:00 p.m. ET two (2) calendar days before the witness will testify. (For example, if a party intends to call a witness on Wednesday, that party shall disclose that witness's name to the opposing party no later than 7:00 p.m. on Monday.)  The party receiving

identification of the witnesses will inform the party identifying the witnesses of any objections by 7:00 p.m. ET the following day, and the parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 9:00 p.m. ET that same day.

44.     Each party will identify by exhibit number the trial exhibits they expect to use on direct examination of the live witness by 7:00 p.m. ET two (2) calendar days before the witness will testify.  The other party shall identify any objections to such exhibits by 7:00 p.m. ET the following day, and the parties shall meet and confer as soon as possible thereafter to resolve the objections, but in any event by 9:00 p.m. ET that day.  For the avoidance of doubt, the notification provision for exhibits does not apply to exhibits to be used during cross-examination or for impeachment purposes.  The parties agree that exhibits to be used for cross-examination or impeachment purposes need not be disclosed in advance of being used or offered at trial.  In the absence of an agreement to resolve an objection, a party shall notify the Court as soon as possible.

45.     For any witness that needs to be taken out of order or who has issues regarding timing and/or availability, those issues must be raised as soon as possible prior to the day the witness is taking the stand so that the Court can consider the issues if necessary. The parties agree to be reasonable and cooperative in permitting witnesses to be taken out of turn due to scheduling issues of the witness beyond the parties' control.

46.     Each party may move an exhibit into evidence at the end of a witness's testimony or at another reasonable time.

47.     For witnesses who will be called to testify via deposition or trial testimony in the Teva litigation at trial, each party will designate the specific pages and lines of the transcript that it intends to play or read during its case-in-chief.  To the extent any party wishes to play or read a subset of an originally designated transcript, each party will provide the other's counsel of record

by electronic mail the specific pages and lines of the transcript that it intends to play by 7:00 p.m. ET two (2) calendar days before the transcript is submitted, read, or played.  The other party shall identify any objections and the specific pages and lines of the transcript it intends to play or read for its counter designation by 7:00 p.m. ET the following day, and the parties shall meet and confer by 9:00 p.m. ET that same day.  If the objections to the disputed testimony cannot be resolved by the parties, the objections will be presented to the Court.

48.     Each party reserves the right to use testimony designated by the other party, whether as a designation or counter-designation, even if not separately listed on its own designation list, provided such use is properly disclosed as above by 7:00 p.m. ET two (2) calendar days before the transcript is played.

49.     The listing of a designation does not constitute an admission as to the admissibility of the testimony nor is it a waiver of any applicable objection.

50.     A party shall promptly provide notice if for any reason it does not intend to call live a witness who is so identified on the list of trial witnesses.  To the extent a party does not call a witness to testify live who is identified as a "live" witness on the list of trial witnesses, the parties may provide designations and counter-designations of the witness's deposition transcript, or deposition or trial testimony transcripts taken in the Teva litigation, as well as objections to the opposing party's designations, in a reasonable time frame as agreed upon between the parties, pursuant to Fed. R. Civ. P. 32.

51.     During the time that a witness is on cross or re-cross examination, counsel offering the witness on direct examination shall not: (a) consult or confer with the witness regarding the substance of the witness' testimony already given or anticipated to be given, except for the

purposes of conferring on whether to assert a privilege against testifying or on how to comply with a court order; or (b) suggest to the witness the manner in which any questions should be answered.

52.    As discussed at the conference before the Court on August 7, 2023, to the extent that deposition designations or Teva litigation trial testimony designations are admitted into evidence, and are available by video, a party seeking to introduce a designation into evidence shall play a video to the Court during the presentation of its case. If video is unavailable, such testimony shall be read in open court. Such testimony shall be identified to the other side in accordance with the procedures of Section VII, above.  To the extent a party relies on that designation at trial or in post-trial submissions, that party shall provide the Court with the appropriate citation.  However, to the extent a party's expert witness relies on testimony by another witness, such testimony may be published to the Court during the expert witness's examination.

53.    Any counter-designations of that same witness's testimony shall be played by video, if available. If video is unavailable, such testimony shall be read in open court. The testimony designated by both parties will be played in the sequence in which the testimony was originally given. Each party will be charged the time taken to play its designations and corresponding counter-designations, as measured by the proportion of the number of lines of testimony for its designations to the total number of lines of testimony played or read.  All colloquy between counsel and objections should be eliminated when the transcript is presented at trial, with the exception of any objections on which the parties intend to seek a ruling from the Court, which may be made at trial.

54.    If an exhibit is referenced in a designation, the exhibit is admitted into evidence if it is included on any party's trial exhibit list and is not otherwise objected to, subject to Section VI.

55.     The party affirmatively designating testimony to introduce into evidence at trial will prepare the video, if available, of the testimony, including all counter-designations.

56.     To the extent that Janssen does not call An Vermeulen, Ph.D, David Hough, Ph.D, and/or Mahesh Samtani, Ph.D, to testify live at trial, Tolmar is entitled to submit deposition testimony and/or trial testimony for that witness taken in the Teva litigation.  Should Tolmar designate additional testimony under this provision, Janssen reserves the right to object and/or counter-designate testimony.

57.     The listing of a designation does not constitute an admission as to the admissibility of the testimony nor is it a waiver of any applicable objection.

58.     The above procedures regarding designations do not apply to portions of transcripts and/or video of a witness used for impeachment or cross-examination of that witness.  Any deposition or Teva litigation trial testimony may be used at trial for purposes of impeachment, regardless of whether a party specifically identified that testimony in the designations, if the testimony is otherwise competent for such purpose.

59.     Janssen and Tolmar further reserve the right to call live or by deposition or trial testimony in the Teva litigation any witness required to respond to an issue raised after the submission of the joint pretrial order; any witness to substitute an identified witness who is no longer able, available, or willing to testify at trial; and any witness to provide foundational testimony should any party contest the authenticity or admissibility of any material proffered at trial.  The parties reserve the right to object to any such witness or testimony offered by the other party.

## VIII.   BRIEF STATEMENT OF INTENDED PROOFS

60.     Defendant has agreed to an entry of judgment of  infringement of claims 1–7, 15, and 17–21 (as dependent from claims 1 and 4) of the '906 Patent pursuant to 35 U.S.C.

§271(e)(4)(A), if such claims are not found to be invalid, but has retained its right to appeal any decision of the Court with respect to the lack of invalidity of any of claims 1-21 of the '906 Patent. (D.I. 86).  Plaintiffs have agreed to an entry of judgment of non-infringement with respect to claims 8-14, 16 and 17-21 (as dependent from claims 8 and 11) in view of the Court's claim construction order.  *Id.*  Plaintiffs will not assert infringement of claims 8-14, 16, and 17-21 in this trial, but have retained their right to appeal that claim construction ruling.  Accordingly, infringement is not an issue to be tried at this time.

61.    Defendant bears the burden of proving invalidity by clear and convincing evidence.

62.    Defendant asserts that it will prove by clear and convincing evidence that the '906 patent is not entitled to claim priority to U.S. App. No. 61/014,918, filed December 17, 2007.

63.    Defendant asserts that it will prove by clear and convincing evidence that claims 1–21 of the '906 Patent are invalid as obvious under pre-AIA 35 U.S.C. § 103 based on the following theories:

a)  Claims 1–7 and 15 are invalid as obvious over Kramer in view of NCT 548 and/or knowledge of a POSA;

b)  Claims 1–7, 15, and 17–21 (as dependent from claims 1 and 4) are invalid as obvious over Kramer in view of NCT 548, the '544 patent, the 384 publication, and/or knowledge of a POSA;

c)  Claims 1–7 and 15 are invalid as obvious over NCT 548 and/or knowledge of a POSA;

d)  Claims 1–7, 15, and 17–21 (as dependent from claims 1 and 4) are invalid as obvious over NCT 548 in view of the '544 patent, the '384 publication, and/or knowledge of a POSA;

e)  Claims 8–14 and 16 are invalid as obvious over Kramer in view of NCT 548, Cleton46, Snoeck, Invega® label and/or knowledge of a POSA;

f) Claims 8–14, 16, and 17–21 (as dependent from claims 8 and 11) are invalid as obvious over Kramer in view of NCT 548, the 544 patent, the 384 publication, Cleton46, Snoeck, Invega label and/or knowledge of a POSA;

g) Claims 8–14 and 16 are invalid as obvious over NCT 548 in view of Cleton46, Snoeck, Invega label and/or knowledge of a POSA;

h) Claims 8–14, 16, and 17–21 (as dependent from claims 8 and 11) are invalid as obvious over NCT 548 in view of the '544 patent, the '384 publication, Cleton46, Snoeck, Invega Label, and/or knowledge of a POSA.

64.   Plaintiffs assert that at least the Kramer document does not qualify as prior art. Plaintiffs assert that they have met their burden of producing evidence sufficient to antedate these references and, to the extent necessary at trial, Plaintiffs intend to provide sufficient evidence to establish that the inventions of the '906 Patent antedate at least these references.

65.   Tolmar asserts that Kramer has a public availability date which qualifies it as prior art to the '906 Patent under 35 U.S.C. § 102(b) (pre-AIA).

66.   Plaintiffs assert that objective indicia support a finding of nonobviousness. Plaintiffs assert that they will prove a nexus between the commercial product, Invega Sustenna, and the '906 Patent claims.

67.   Defendant asserts that it will, to the extent necessary, rebut Plaintiffs' arguments regarding any alleged objective indicia of non-obviousness and any alleged nexus between Invega Sustenna and claims 1-21 of the '906 Patent.

68.   Defendant asserts that it will prove by clear and convincing evidence that claims 1–21 are invalid under 35 U.S.C. § 112 based on the following theories:

a) Lack of enablement of claims 1-7, 15 and 17-21 with respect to the claimed dosing regimen including "administering intramuscularly in the deltoid or gluteal muscle of the patient in need of treatment a first maintenance dose of about 25 mg-eq. to about 150 mg-eq. of paliperidone as paliperidone palmitate in a sustained release formulation a month (±7 days) after the second loading dose" and "subsequent maintenance doses of from about 25 mg-eq. to 150 mg-eq." being administered "in the deltoid or gluteal muscle of the psychiatric patient in need of treatment at monthly (±7 days) intervals";

b) Lack of enablement of claims 8-14 and 16-21 with respect to the claimed dosing regimen for "administering paliperidone palmitate to a renally impaired psychiatric patient" in "a first loading dose of from about 75 mg-eq.," "a second loading dose of from about 75 mg-eq.," "a first maintenance dose of about 25 mg-eq. to about 75 mg-eq." or about 50 mg-eq. "of paliperidone as paliperidone palmitate in a sustained release formulation a month (±7 days) after the second loading dose," and "subsequent maintenance doses of from about 25 mg-eq. to 150 mg-eq." being administered "in the deltoid or gluteal muscle of the psychiatric patient in need of treatment at monthly (±7) intervals";

c) Lack of written description of claims 1-7, 15 and 17-21 with respect to the claimed dosing regimen including "administering intramuscularly in the deltoid or gluteal muscle of the patient in need of treatment a first maintenance dose of about 25 mg-eq. to about 150 mg-eq. of paliperidone as paliperidone palmitate in a sustained release formulation a month (±7 days) after the second loading dose" and "subsequent maintenance doses of from about 25 mg-eq. to 150 mg-eq." being administered "in the deltoid or gluteal muscle of the psychiatric patient in need of treatment at monthly (±7 days) intervals";

d) Lack of written description of claims 8-14 and 16-21 with respect to the claimed dosing regimen for "administering paliperidone palmitate to a renally impaired psychiatric patient" in "a first loading dose of from about 75 mg-eq.," "a second loading dose of from about 75 mg-eq.," "a first maintenance dose of about 25 mg-eq. to about 75 mg-eq." or about 50 mg-eq. "of paliperidone as paliperidone palmitate in a sustained release formulation a month ($\pm$7 days) after the second loading dose," and "subsequent maintenance doses of from about 25 mg-eq. to 150 mg-eq." being administered "in the deltoid or gluteal muscle of the psychiatric patient in need of treatment at monthly ($\pm$7) intervals."

e) Lack of enablement of claims 4, 5, 11, 12, and 15–21 with respect to the term "psychotic disorder";

f) Lack of written description of claims 4, 5, 11, 12, and 15–21 with respect to the term "psychotic disorder."

69.    Janssen asserts that it will prove that it is entitled to an order that pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of ANDA No. 211995 be a date that is not earlier than the expiration date of the 906 Patent, or such later date as the Court may determine.

70.    Janssen asserts that it will prove that it is entitled to an order that Tolmar, its officers, agents, servants, and employees, and those persons in active concert or participation with Tolmar, are preliminarily and permanently enjoined from commercially manufacturing, using, importing, offering for sale, and selling Tolmar's Proposed Generic Product and any other product that infringes or induces or contributes to the infringement of the 906 Patent, prior to the expiration of the 906 Patent, or such later date as the Court may determine.

71.     Janssen asserts that it will prove that it is entitled to an order that if Tolmar engages in the commercial manufacture, use, offer for sale, sale, and/or importation into the United States of Tolmar's Proposed Generic Product prior to the expiration of the 906 Patent, a Judgment awarding damages to Janssen resulting from such willful infringement together with interest.

72.     Janssen asserts that it will prove that it is entitled to a declaration that this is an exceptional case pursuant to 35 U.S.C. §§ 285 and 271(e)(4) and that Janssen is entitled to costs, expenses, and disbursements in this action, including reasonable attorney fees.

73.     Defendant asserts that it will prove that it is entitled to a judgment declaring that all claims of the '906 Patent are invalid for failure to comply with 35 U.S.C. §§ 102, 103, and/or 112.

74.     Defendant asserts that it will prove that it is entitled to reasonable costs and attorneys' fees incurred in this action under 35 U.S.C. § 285.

75.     Defendant asserts that it will prove that it is entitled to a judgment award to Defendant of its costs and attorneys' fees.

### A.     Defendant's Statement of Proofs Regarding Issues Upon Which the Court Granted Plaintiffs' Partial Motion for Summary Judgment

76.     To preserve the record for any appeal, Defendant intends to ask the Court to allow it to make an offer of proof regarding the following issues upon which the Court granted Plaintiffs' Partial Motion for Summary Judgment. (D.I. 114).   Janssen does not agree that it is either necessary, or appropriate, for Tolmar to make an offer of proof on issues that were decided on summary judgment, as that decision will be incorporated into the final judgment under the merger rule.  Janssen also strongly objects to using trial time for this purpose; the trial is already relatively short and Janssen should not be put to the burden of preparing to cross-examine Tolmar witnesses or otherwise defend against claims that have been decided in its favor as a matter of law.

77.     To preserve the record for any appeal, Defendant seeks to make an offer of proof that claims 1, 2, 4, 6, 7, and 15 of the '906 Patent are invalid as anticipated under pre-AIA 35 U.S.C. § 102 by NCT 577.

78.     To preserve the record for any appeal, Defendant seeks to make an offer of proof that claims 1–7 and 15 are invalid as obvious over PI-74 and PI-75 in view of NCT 548 and/or knowledge of a POSA;

79.     Claims 1–7, 15, 17–21 (as dependent from claims 1 and 4) are invalid as obvious over PI-74 and PI-75 in view of NCT 548, the '544 patent, or the '384 publication and/or knowledge of a POSA.

## IX.     STATEMENTS BY COUNTERCLAIMANTS OR CROSSCLAIMANTS

80.     NONE

## X.     AMENDMENTS TO THE PLEADINGS

81.     The parties do not seek to amend the pleadings.

## XI.     CERTIFICATION OF SETTLEMENT DISCUSSIONS

82.     The parties hereby certify that they have engaged and are continuing to engage in a good faith effort to explore the resolution of the controversy by settlement.  Thus far the parties have been unable to reach a settlement; however, the parties remain open to further continuing such discussions.

## XII.     MOTIONS IN LIMINE

83.     Any motion in limine briefing filed by the parties, including motions, oppositions, and replies, shall be filed with the Court according to the schedule agreed to by the parties.

### XIII.   MISCELLANEOUS ISSUES

#### A.      Setup of Electronic and Computer Devices

84.      The parties request that the Court grant access to the Courtroom on the business day before trial begins, i.e., Friday, October 6, 2023 (or whatever date is convenient to the Court), for the purposes of setting up electronic and computer devices.  To the extent both parties are utilizing common equipment in the Courtroom, the parties will share the cost of that equipment.

#### B.      Trial Parameters

85.      Per the Court's August 8, 2023 Order (D.I. 99), this matter is scheduled for a four-day bench trial beginning at 8:30 a.m. on October 10, 2023, with the subsequent trial days beginning at 8:30 a.m.  The first three days of the trial will be held in Courtroom 203 of the Howard T. Markey National Courts Building in Washington, D.C.  The fourth day of the trial will be held in Courtroom 402 of the National Courts Building.  The trial will be timed, and each party will be given 13 hours in which to present its respective case.

86.      Instead of opening statements, each party may prepare a narrative statement no more than 10 pages in length, double-spaced, setting forth the party's legal contentions and a summary of the evidence the party expects to elicit from each witness.  Those statements shall be simultaneously filed and served by 5:00 p.m. ET on Friday, October 6, 2023.

87.      The presentation at trial will occur in the following order:

      a.   Defendant will present its case-in-chief on invalidity;

      b.   Plaintiffs will present their response in opposition to Defendant's case on invalidity, including objective indicia of nonobviousness, if any;

      c.   Defendant will present its rebuttal, limited to rebuttal on objective indicia of nonobviousness presented by Plaintiffs, if any.

88.     Closing arguments will be held after the submission of post-trial briefs, at a date and time to be determined.

89.     The time used by a party for closing argument, if any, will not count against that party's 13 hours.

90.     The Court has entered a Protective Order (D.I. 28) to safeguard the confidentiality of certain of the parties' business and technical information.  Nonetheless, the presentation of evidence at trial shall take place in open court, unless a party specifically requests, and the Court agrees, that the Court be closed to the public during presentation of certain portions of the evidence.

### C.      Post-Trial Briefing

91.     The parties will coordinate with the Court at the conclusion of trial to provide a post-trial briefing schedule.

## XIV.   Order to Control Course of Action

92.     This order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

**List of Exhibits to the Proposed Joint Pretrial Order**

| | |
|---|---|
| Exhibit 1 | Joint Statement of Stipulated Facts |
| Exhibit 2 | Plaintiffs' Statement of Issues of Fact That Remain to Be Litigated |
| Exhibit 3 | Defendant's Statement of Issues of Fact That Remain to Be Litigated |
| Exhibit 4 | Plaintiffs' Statement of Issues of Law That Remain to Be Litigated |
| Exhibit 5 | Defendant's Statement of Issues of Law That Remain to Be Litigated |
| Exhibit 6 | Parties' Joint Exhibit List |
| Exhibit 7 | Plaintiffs' Trial Exhibit List |
| Exhibit 8 | Defendant's Trial Exhibit List |
| Exhibit 9 | Plaintiffs' Witness List (including Defendant's objections) |
| Exhibit 10 | Defendant's Witness List (including Plaintiffs' objections) |
| Exhibit 11 | Plaintiffs' Deposition Designations (including Defendant's objections and counter-designations and Plaintiffs' objections to counter-designations) |
| Exhibit 12 | Defendant's Deposition Designations and Teva litigation Trial Testimony and Deposition Designations (including Plaintiffs' objections and counter-designations and Defendant's objections to counter-designations) |
| Exhibit 13 | Plaintiffs' Experts' CVs |
| Exhibit 14 | Defendant's Experts' CVs |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Barbara L. Mullin
Aron Fischer
Andrew D. Cohen
Lachlan S. Campbell-Verduyn
Zhiqiang Liu
Jay J. Cho
Joyce L. Nadipuram
Anna Boltyanskiy
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000


*Attorneys for Plaintiffs Janssen*
*Pharmaceuticals, Inc. and Janssen*
*Pharmaceutica NV*

September 25, 2023

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*

_____
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE  19801
apoff@ycst.com
pkraman@ycst.com

OF COUNSEL:

Kevin Shortsle, Esquire
Madison J. Scaggs, Esquire
David C. Van Dyke, Esquire
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL  60604

R. Saleha Mohamedulla, Esquire
Daniel A. Balavitch, Esquire
HOWARD & HOWARD ATTORNEYS PLLC
450 West Fourth Street
Royal Oak, MI  48067-2557


*Attorneys for Defendant Tolmar, Inc.*



SO ORDERED on this ___ day, _____, 2023.



_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE